## Lamb-Davis Lumber Company, Appellant, v. The Great Western Cereal Company, Appellee.

### Gen. No. 14,933.

INSTRUCTIONS—*when peremptory erroneous.* It is error peremptorily to instruct for the defendant if there is evidence which tends to support the plaintiff's cause of action.

Assumpsit. Appeal from the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in this court at the October term, 1908. Reversed and remanded. Opinion filed March 1, 1910.

RALPH F. STERN, for appellant.

ADAMS & FROEHLICH, for appellee; EDWARD H. STEARNS, of counsel.

MR. JUSTICE FREEMAN delivered the opinion of the court.

This is a suit by appellant to recover $3843, the price of five carloads of box-shooks shipped to defendant by plaintiff and not paid for. There is no dispute as to the delivery of the goods nor as to the price. At the conclusion of the evidence the Superior Court directed a verdict for the defendant and entered judgment accordingly, from which plaintiff appeals.

It appears that plaintiff had some business relations with an agency existing on the Pacific Coast prior to November, 1906, known as the Northern Box Manufacturers Agency. This agency apparently made contracts to supply purchasers with box-shooks and then apportioned the contracts among manufacturers, who had no direct dealings with the purchasers, but only through the agency. It appears that on January 16, 1906, the Northern Box Manufacturers Agency wrote plaintiff stating that it had taken a contract with the defendant herein and asking plaintiff if it would furnish fifty carloads of boxes or one carload a week on that contract. To this the plaintiff replied on January 20, 1906, that it was "willing to take the fifty cars that you offer us," providing the Agency was able to give it orders for twenty or twenty-five carloads of packing cases. To this the Agency replied on January 22, 1906, that it expected to be able to obtain orders for the packing cases and that its "people in the east are working on this matter now." It appears from a letter written by the Agency to plaintiff dated November 26, 1906, and introduced in evidence that the Agency claimed that only a part of that order had been filled by plaintiff, and that thirteen cars out of the fifty to be furnished by the plaintiff still remained to be shipped. It appears, however, that the plaintiff claimed to have filled its contract for the

whole fifty cars. In another letter of the same date, November 26, 1906, the Agency returned to plaintiff an invoice of goods shipped defendant, saying, "We will ask you that you invoice the same direct to them and make your own collection, as we are endeavoring to liquidate the financial affairs of the Agency and therefore do not care to put any more accounts upon the books." A previous letter to the same effect, dated November 22, 1906, had been sent plaintiff by the Agency. Thereupon plaintiff wrote direct to the defendant of date November 26, 1906, enclosing two invoices, stating that it (the plaintiff) had been requested to bill direct to defendant and saying: "We have taken the liberty of booking you for two cars more on the same terms, as we have already cleaned up the old orders and would like to hear from you confirming this; as we understand it, this transaction will go to you direct in the future." To this the defendant replied of date December 1, 1906, that it would credit the shipments "against the orders we gave the Northern Box Manufacturers Agency," that it had no objections to plaintiff's assuming part of that contract, if agreeable to the Agency, and asking plaintiff to state "how much of that contract you wish to assume." To this plaintiff answered December 7, 1906, enclosing an invoice for another car of boxes and saying it would finish another car for defendant "about the middle of next week and then all our contracts for your boxes will be filled;" that it had no more orders on its books received through the Agency. On January 2, 1907, the defendant wrote the Agency to the effect that defendant understood the Agency was to be disbanded and that was probably the reason the plaintiff had been sending defendant the invoices direct, "although we have been applying them against your contract," and that fearing its interests were not being taken care of as they should be by the Agency, defendant would be obliged to hold up Lamb-Davis & Co.'s bills "until this matter of future

shipments is settled." A copy of this letter to the
Agency was enclosed to plaintiff, defendant explaining
that it understood plaintiff was "interested in the
Agency," that defendant did not consider it had
received very good treatment, that the Agency "obli-
gated themselves to furnish us with a certain number
of cars of boxes within a certain time," and that
"now we cannot get any satisfaction from them."
To this on January 7, 1907, plaintiff replied: "We
found it possible to make a few cars after we had
filled our order to them (the Agency) and advised you
direct that we had booked them and asked you to ad-
vise us if this was not satisfactory. We received no
reply from you to the contrary and considered that we
had these booked to you irrespective of the Northern
Box Mfrs. Agency, and we must ask that you make
settlement to us direct." The defendant answered
of date January 19, 1907, that it would "dislike very
much to have any controversy over this matter, and
do not believe there is any occasion for it, providing
you would exert yourself in straightening us out with
the Northern Box Manufacturers Agency matter."
There was subsequent correspondence between the
plaintiff and defendant, which however throws no new
light on the controversy.

It is insisted in behalf of plaintiff that the court
erred in directing the jury at the close of all the evi-
dence to find the issues for the defendant. In this
contention we are obliged to concur. It appears from
the evidence and is admitted by counsel for the defense
that on November 17, 1906, the plaintiff shipped to the
defendant a carload of the cereal boxes which the
defendant paid for to plaintiff directly, on the 19th
of December, 1906. The payment was made by check
to the plaintiff's order, which check was duly honored
by the defendant. It was for the jury to consider in
connection with all the evidence the bearing of this
payment upon the question whether the defendant's
acceptance of the six carloads shipped directly to it

by plaintiff and payment for one of them, created an implied contract of sale and purchase between plaintiff and defendant independent of defendant's relations with the Box Manufacturers Agency. The shipments of the cars in controversy began November 13, 1906, and the last was made and invoiced to defendant December 13, 1906. There is evidence tending to show that all the boxes shipped on plaintiff's contract with the Agency had been applied on the Agency's contract with defendant; that plaintiff claimed to have furnished the Agency all it had agreed to furnish, and had notified defendant in its letter of November 26, 1906, enclosing two new invoices, that it had ''already cleaned up the old orders.'' It appears that the five cars in question were shipped and invoiced directly to defendant by plaintiff and not through the Agency.

It is urged by counsel for defendant that ''to entitle the plaintiff to recover, it must show some contract with the defendant, and a party has a right to select and determine with whom he will contract and cannot have another person thrust upon him without his consent.'' Whether there was a contract between the plaintiff and defendant is, as we have said, a question of fact for the jury, and it was taken from their consideration by the instruction directing a finding for the defendant. There is plainly evidence tending to show such a contract. When the defendant accepted the carloads sent it it did so on the terms and conditions upon which it was informed the shipments were made. It could not, after accepting the shipments, retain the goods, change the contract with its acceptance implied, refuse to pay for them and then exonerate itself on the ground it had applied the goods on a contract it had with another party, without the consent of the shipper. There is no evidence tending to show, so far as we discover, that the plaintiff ever did or said anything implying such consent. In defendant's letter of December 1, 1906, to plaintiff it wrote it had no objection to plaintiff's assuming part of the Agency's contract if

agreeable to the latter and that if plaintiff "will kindly correspond with them and advise how much of that contract you wish to assume," defendant would be only too glad to have the cars so applied.    It is evident from the correspondence that defendant was anxious to have plaintiff assume a part at least of the contract between defendant and the Agency.    Plaintiff, how-ever, refused to do so and replied of date December 7, 1906, that it had no more orders on its books for de-fendant from the Northern Box Mfrs. Agency, and defendant must look to the Agency for information on that    matter.    Nevertheless defendant kept the car-loads it had received and continued to receive and keep such as came afterward and refused to pay for them for the alleged reason that "We are obliged to refuse payment for these boxes until such time as the con-tracts are taken care of.    As you also were a member of this Association we must assume that you as well as the other members are responsible for the obliga-tions assumed by the Agency."    The President of the plaintiff Company testified "there was no arrange-ment    whereby    the    Northern    Box    Manufacturers Agency was authorized to contract in the name of our company.    We were not under any obligation to fill orders and we would reject or accept them as we saw fit."    There is also evidence in plaintiff's behalf that there was no contract between plaintiff and defendant for the boxes contracted for by the Agency.

The theory of the defendant seems to be that plaint-iff having accepted an order to furnish fifty cars to the Agency to be applied by the latter on  its contract to furnish seventy-five cars to the defendant, the latter had a right to seize plaintiff's property and hold plaintiff liable for the Agency's alleged default, and any alleged damage thereby suffered, without refer-ence to whether plaintiff was responsible for such de-fault or not and without legal evidence, so far as we can discover, tending to show that the Agency had authority to act for and bind plaintiff by its contract

with defendant, and without evidence tending to show the amount of the alleged damages.

Defendant's counsel argues that "nowhere in the record is there any evidence of any acceptance or direction from the appellee to appellant to ship any merchandise whatsoever." There is no question however that defendant accepted and retained the merchandise in controversy, and has not paid for it. The evidence should have gone to the jury.

For the reasons indicated the judgment of the Superior Court will be reversed and the cause remanded.

*Reversed and remanded.*